UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                  :

**FELIX GRIMES**,

                      Plaintiff,       :  **MEMORANDUM DECISION AND ORDER**

          – against –               :  19-cv-01066 (AMD) (VMS)

**SAMINDRA SIL**, *et al.*,

                      Defendants.

-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

      The *pro se* plaintiff filed this employment discrimination action on February 20, 2019 against the New York State Insurance Fund ("NYSIF") and individual defendants. (ECF No. 1.) On June 19, 2019, he filed an amended complaint, naming only the NYSIF. (ECF No. 12.) He alleges that the defendant failed to promote him, did not accommodate his disability, subjected him to unequal terms and conditions of employment and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the New York State Human Rights Law and the New York City Human Rights Law. (*Id.* at 3-4.) On July 25, 2019, the defendant moved to dismiss the plaintiff's amended complaint. (ECF No. 16.) For the reasons that follow, I grant the motion to dismiss, but grant the plaintiff leave to amend his complaint.

## BACKGROUND

      The plaintiff was employed by the NYSIF from 1974 until his retirement in April of 2018. (ECF No. 12 at 12.) He claims that the defendant discriminated and retaliated against him because he is an African American. (*Id.*)

He alleges that he was "placed in situations that . . . diminished [his] career and promotional opportunities as compared to non-African Americans." (*Id.*) He was promoted several times, but reached a "glass ceiling for African Americans" in December of 1997 when he was promoted to Claims Services Representative II ("CSR II"). (*Id.*) At that time, there was an African American claims administrator, but there has not been one since. (*Id.*) He claims that he was not afforded promotional opportunities to become a CSR III because of his race. (*Id.* at 17.) Individuals that he supervised were promoted, but each time he interviewed for a position "the candidate chosen was not based on skills, but was chosen due to race." (*Id.*) In one instance, his interview time was changed; interviewer John Massetti appeared for his colleague Samindra Sil's interview but not for his. (*Id.*) Massetti and Sil "were seen leaving the interview engaged in a personal conversation that consisted of laughter," and Sil was awarded the promotion. (*Id.*)

The plaintiff also claims that when the Claims Department was divided into two district offices in December of 2016—New York City One and New York City Two—he was assigned to New York City Two, which was "extremely degrading" to him. (*Id.* at 12.) New York City Two was "mainly comprised of African Americans . . . and personnel that vary from attendance to behavior issues," while New York City One was "populated with the highly efficient and dependable employees." (*Id.*) Also in December of 2016, the plaintiff asked that his desk be moved next to the window for confidentiality reasons, but "[n]o action was taken." (*Id.*)

Although he was assigned to New York City Two, the plaintiff supervised personnel in both offices until April of 2017, when he was assigned to supervise a new staff in New York City Two. (*Id.*) The business manager, John Zenkewich, introduced the plaintiff to his new staff, and said that the plaintiff was there to "whip [them] into shape." (*Id.* at 12-13.) This comment offended the plaintiff as an African American, because the comment "relates to

2

slavery." (*Id.* at 13.) The plaintiff was assigned to supervise the "largest" group of employees with "major issues with attendance and other issues," which he considered "unfair." (*Id.*) He set up meetings from May to June of 2017 with Zenkewich and others "to discuss training, mentoring[,] coaching and development." (*Id.*) At one meeting on July 12, 2017, Sil—then a CSR III—"became confrontational," and "sham[ed] and threaten[ed]" staff. (*Id.*) Several employees "were . . . disrespected and threatened." (*Id.*) Zenkewich did not seek the plaintiff's input about the meeting; the plaintiff "felt that his behavior was racially motivated and [the plaintiff's] opinion as an African American was invalid." (*Id.*) On August 8, 2017, the plaintiff held another meeting "to present different scenarios [to] improve workflow and brain storm alternatives to correct the inequities of [his] work assignment." (*Id.*)

On September 18, 2017, Sil sent the plaintiff what he characterizes as a "retaliation memo" "regarding failure to pay an award, transfer case etc." (*Id.* at 14.) For the plaintiff, "[t]his was the last straw," so he "filed a step one grievance in response to the memo citing retaliation, discrimination, training and disparate impact." (*Id.*) On November 14, 2017, he met with Zenkewich to discuss his grievance, but the meeting "was one sided." (*Id.*) On November 28, 2017, the plaintiff—unsatisfied with the outcome of the meeting—filed for step two grievance. (*Id.*)

The plaintiff maintains that "[t]he retaliation continued." (*Id.*) On December 1, 2017, he was advised that he was going to be relocated, "despite [his] medical condition." (*Id.*) He was moved, but returned to his original location after he produced medical documentation. (*Id.* at 15.) On March 14, 2018, he received another "retaliation memo" because neither he nor an employee under his supervision objected to or processed an award on time. (*Id.* at 15, 27.) According to the plaintiff, Tom Stoddard, another supervisor, could have objected to or

processed the award.  (*Id.* at 15.)  However, Stoddard, a white male, did not receive a counseling memo.  (*Id.*)  The plaintiff met with Zenkewich and told him that it was "discrimination" for him to "refuse to remove" the counseling memo—a memo that he claims he received "because of [his] race."  (*Id.* at 16.)  Zenkewich said that the memo was justified.  (*Id.*)

The plaintiff alleges that he was "not provided an incoming work tray" at New York City Two from April of 2017 to April of 2018, but Stoddard was given one when he joined the office.  (*Id.* at 16-17.)  Finally, the plaintiff claims that in 2013, he "was counseled for late awards while no other CSR II's were counseled."  (*Id.* at 17.)

## STANDARD OF REVIEW

In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (internal quotation marks omitted).  While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Because the plaintiff is proceeding *pro se*, his complaint is held "to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").  Courts consider *pro se* pleadings liberally, and in the light most favorable to the plaintiff.  *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "The pleading

4

requirements in discrimination cases are very lenient, even *de minimis*." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir.1998)) (internal quotation marks omitted). Nevertheless, "a complaint's allegations must . . . at least 'permit the court to infer more than the mere possibility of misconduct.'" *Richardson v. City of New York*, No. 17-CV-9447, 2019 WL 1512646, at *2 (S.D.N.Y. Apr. 8, 2019) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

The defendant makes six arguments for dismissal: (1) the plaintiff served the defendant thirty-six days past the service deadline; (2) the Eleventh Amendment bars the plaintiff's Section 1981, NYSHRL and NYCHRL claims; (3) the plaintiff did not exhaust his administrative remedies for most of his allegations; (4) most of the plaintiff's claims are time-barred; (5) the plaintiff's amended complaint does not state a Title VII claim for discrimination; and (6) it does not state a Title VII claim for retaliation.[1]

### I. Service

The defendant argues that dismissal is warranted because the plaintiff served the defendant late and did not show good cause. Under Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—

---

[1] The plaintiff filed a memorandum in opposition to the defendant's motion to dismiss (ECF No. 26), but his memorandum does not address the defendant's arguments for dismissal. "[The] Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed. Application of this proposition is, however, tempered by [the] Court's discretion[.]" *Lipton v. Cnty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004). Because the plaintiff is *pro se*, I do not deem his claims abandoned. *See Wilkinson v. New York State*, No. 18-CV-4148, 2019 WL 5423573, at *6 n.9 (E.D.N.Y. Oct. 22, 2019) ("Considering Plaintiff's *pro se* status, the Court will not deem his claims abandoned."); *United States v. Simmons*, No. 17-CR-127, 2019 WL 3532113, at *6 (S.D.N.Y. Aug. 2, 2019) ("Where a pro se petitioner fails to respond to defendant's argument that a claim should be dismissed, however, the Court has an obligation to nevertheless consider the claim on its merits.") (citing *Rush v. Canfield*, 649 F. App'x 70, 71 (2d Cir. 2016)).

5

on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

The plaintiff filed this action on February 20, 2019 (ECF No. 1), and served the defendant 126 days later on June 26, 2019 (ECF No. 13), well after the 90-day deadline. The plaintiff amended his complaint before he served the defendant, but "the fact that [he] filed an Amended Complaint . . . does not otherwise extend or enlarge [his] time to effect service." *Maldonado v. Country Wide Home Loans, Inc.*, No. 14-CV-7145, 2016 WL 11481201, at *2 (E.D.N.Y. Jan. 4, 2016) (collecting cases); *see also Trujillo v. City of New York*, No. 14-CV-8501, 2016 WL 10703308, at *5 (S.D.N.Y. Mar. 29, 2016), *aff'd*, 696 F. App'x 560 (2d Cir. 2017) ("The filing of an amended complaint . . . does not restart the . . . period for service under Rule 4(m).") (quoting *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 607 (S.D.N.Y. 2012)).

The plaintiff has not shown good cause for his late service. In his opposition, the plaintiff does not mention late service, let alone explain why he served the defendant late. (*See* ECF No. 26.) His "*pro se* status is no excuse for failure to serve the defendant properly and does not automatically amount to good cause for failure to serve within the time allotted by Rule 4(m)." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 598 (E.D.N.Y. 2013) (quoting *Harper v. NYC Admin. for Children's Servs.*, No. 09-CV-2468, 2010 WL 23328, at *2 (S.D.N.Y. Jan. 5, 2010)) (internal quotation marks omitted); *see also Kogan v. Facebook, Inc.*, No. 19-CV-2560, 2020 WL 528706, at *8 (S.D.N.Y. Feb. 3, 2020) ("[A] party's mere *pro se* status, or search for counsel, does not alone establish good cause for a failure to effect timely service.").

"[C]ourts may exercise their discretion to grant extensions under Rule 4(m) absent a showing of good cause under certain circumstances." *Zapata v. City of New York*, 502 F.3d 192, 193 (2d Cir. 2007). "In determining whether to exercise such discretion, courts consider the following factors: '(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision.'" *Jordan*, 928 F. Supp. 2d at 598 (quoting *Carroll v. Certified Moving & Storage, Co.*, No. 04-CV-4446, 2005 WL 1711184, at *2 (E.D.N.Y. July 19, 2005)). Courts may also consider additional factors. *Kogan*, 2020 WL 528706, at *9. "[I]mportantly, even if the balance of hardships favors the plaintiff a district court may still decline to excuse a failure to timely serve the summons and complaint where the plaintiff fails to advance some colorable excuse for neglect." *Id.* (quoting *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 421 (S.D.N.Y. 2013)) (internal quotation marks omitted). Although the plaintiff did not show good cause or offer a colorable excuse for his failure to effect service in a timely way, in my discretion I decline to dismiss his complaint on this ground.

First, the plaintiff filed this action within ninety days of receiving his right to sue letter, but this period has since expired, and would bar a refiled action. This factor weighs in favor of the plaintiff. Second, neither party asserts that the defendant had actual notice of the plaintiff's claims. The defendant did, however, have notice of the plaintiff's EEOC complaint, which included some of the claims he asserts in the complaint. *See Morris v. Ford Motor Co.*, No. 07-CV-424, 2009 WL 2448473, at *4 (W.D.N.Y. Aug. 7, 2009) ("Because the claims against [the defendants] were previously alleged in the EEOC charge, [the defendants] had actual notice of

7

the factual and legal basis for the claims now set forth in the Complaint."). This favors the plaintiff slightly, at least to the extent that he made some of the same claims in the EEOC complaint. Third, there is no suggestion that the defendant attempted to conceal the defect in service, which weighs in the defendant's favor.[2] Fourth, the defendant would be required to defend this suit if it is not dismissed, because the ninety-day period following issuance of the plaintiff's right to sue letter has expired; the defendant has not, however, asserted that it would suffer any specific prejudice. *See Burke v. Vision Gov't Sols., Inc.*, No. 17-CV-1955, 2018 WL 6272757, at *6 (D. Conn. Nov. 30, 2018) (finding that the fourth factor weighed in favor of granting an extension where the there was no evidence that the defendants' ability to defend on the merits would be impaired) (collecting cases). In addition to these factors, I consider that the plaintiff served the defendant on June 26, 2019 (ECF No. 13), less than two weeks after defendants Joseph Nolte and Samindra Sil notified the Court and the plaintiff that the NYSIF had not been served (ECF No. 11). Under the circumstances, I decline to dismiss the complaint on service grounds.

## II. Eleventh Amendment Immunity

Because the defendant is a state entity, the plaintiff's Section 1981, NYSHRL and NYCHRL claims are barred by the Eleventh Amendment. "'[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity,' or unless Congress has 'abrogate[d] the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment.'" *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (quoting *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006)). Eleventh Amendment immunity

---

[2] The defendant does not explain why the Office of the Attorney General waited until after the service period expired to file a letter to the Court regarding service.

8

extends "to state agents and state instrumentalities that are, effectively, arms of a state," *id.*, including the defendant. *See, e.g., Strunk v. N.Y. State Ins. Fund*, 47 F. App'x 611, 612 (2d Cir. 2002) (finding that "claims against the NYSIF" were "barred by the Eleventh Amendment"); *Perry v. State Ins. Fund*, 83 F. App'x 351, 353 (2d Cir. 2003) ("We agree with the district court that the Fund is a 'state agency' entitled to sovereign immunity.").

The state has not waived its immunity from Section 1981, NYSHRL and NYCHRL claims. *See Dimps v. Taconic Corr. Facility*, No. 19-975, 2020 WL 564259, at *1 (2d Cir. Feb. 5, 2020) (summary order) (finding that New York has not waived its sovereign immunity as to Section 1981 claims); *Cater v. New York*, 316 F. Supp. 3d 660, 667 (S.D.N.Y. 2018) ("New York has not waived its immunity from suit under the New York Human Rights Law."); *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir. 2004) ("The City of New York does not have the power to abrogate the immunity of the State, and we have found no evidence that the State has consented to suit in federal court under the NYCHRL."). Nor has Congress abrogated the state's immunity from these claims. *See Jennings v. SUNY Health Sci. Ctr. at Brooklyn (Downstate Med. Ctr.)*, 201 F. Supp. 3d 332, 335 (E.D.N.Y. 2016) ("Congress has not passed any statutes abrogating New York's immunity from . . . 42 U.S.C. § 1981, New York State Executive Law, or New York City Human Rights Law."). Accordingly, I dismiss the plaintiff's Section 1981, NYSHRL and NYCHRL claims because they are barred by the Eleventh Amendment.

### III. Timeliness and Exhaustion of Administrative Remedies

#### a. Timeliness

A plaintiff asserting Title VII claims must file an employment discrimination charge within 300 days of the alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e); *Duplan v. City of*

*New York*, 888 F.3d 612, 621-22 (2d Cir. 2018).  The plaintiff filed an EEOC complaint on August 21, 2018.  (ECF No. 12 at 10.)  Accordingly, any incident that occurred before October 25, 2017—300 days before the filing date—is not actionable, unless the continuing violations doctrine or equitable tolling applies.  Incidents that occurred before October 25, 2017 include counseling the plaintiff for awards in 2013; assigning the plaintiff to New York City Two in December of 2016; refusing to move the plaintiff's desk next to the window in response to his December 2016 request; assigning the plaintiff a new staff in April of 2017—and Zenkowich's introduction of the plaintiff as someone who would "whip [the employees] into shape;" acting inappropriately at meetings in July and August of 2017, and refusing to seek the plaintiff's input about these meetings; and issuing a "retaliation memo" in September of 2017.

The continuing violation doctrine "applies to claims 'composed of a series of separate acts that collectively constitute one unlawful [ ] practice.'"  *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Washington v. Cnty. of Rockland*, 373 F.3d 310, 318 (2d Cir.2004)).  Alleging a series of acts that amount to a "serial violation" is not sufficient to invoke the doctrine; the plaintiff must assert "claims that *by their nature* accrue only after the plaintiff has been subjected to some threshold amount of mistreatment."  *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)) (emphasis added).  "Where the plaintiff complains of discrete discriminatory or retaliatory acts such as termination, failure to promote, denial of transfer, or refusal to hire, such claims are not actionable if they occurred prior to the 300-day period even though they may be related to acts that occurred within the permissible 300-day period."  *Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 49 (S.D.N.Y. 2019) (quoting *Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019)) (internal quotation marks omitted).  Because the plaintiff complains of discrete acts, and because he offers no basis for

equitable tolling, his claims based on discrete acts that occurred before October 25, 2017 are time-barred.

### b. Exhaustion

"As a precondition to filing an action in federal court under Title VII . . . a litigant must first have exhausted [his] administrative remedies by timely filing a charge of discrimination with the [EEOC]." *Hewitt v. N.Y.C. Dep't of Health & Mental Hygiene*, 535 F. App'x 44, 45 (2d Cir. 2013) (summary order). "An allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge." *Hoffman v. Williamsville Sch. Dist.*, 443 F. App'x 647, 649 (2d Cir. 2011) (summary order). "Unexhausted claims are 'reasonably related' where (1) the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination; (2) the plaintiff is alleging retaliation by an employer against an employee for filing an EEOC charge; or (3) a plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *DeLaurencio v. Brooklyn Children's Ctr., Superintendent*, 111 F. Supp. 3d 239, 247 (E.D.N.Y. 2015) (quoting *Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) (superseded on other grounds)) (internal quotation marks omitted).

The defendant argues that the plaintiff did not exhaust all of his claims, and that his new claims are not reasonably related to the allegations in his EEOC charge. Specifically, the defendant challenges the following allegations: the plaintiff's claims that are based on a failure to promote, his assignment to an assertedly inferior part of the office, his office placement and relocation, his responsibilities as a supervisor, his supervisor's failure to give him credit for his ideas, Zenkewich's introduction of the plaintiff as someone who would "whip [the employees]

into shape," the July 12, 2017 meeting and its aftermath, and the way his union grievance was handled. (ECF No. 18 at 20-21.) Many of these actions are time-barred.

I find that the plaintiff exhausted his administrative remedies for the actions that occurred on or after October 25, 2017—actions concerning his grievance, his relocation, his second "retaliation" memo and his work tray. (*See id.* at 24.) In his EEOC complaint, the plaintiff claimed that the NYSIF "discriminated against [him] based on [his] race and retaliation." (ECF No 12 at 10.) He specifically cited his step two grievance and the NYSIF's failure to respond, and that he was requested to provide medical documentation to receive reasonable accommodation, among other examples. (*Id.*) Accordingly, his claims based on his grievance and relocation were exhausted; the conduct he complains of in his amended complaint "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge." *DeLaurencio*, 111 F. Supp. 3d at 247.

In his amended complaint, the plaintiff does not provide details or dates to support his allegations concerning a failure to promote. He alleges that he was "placed in situations that . . . diminished [his] career and promotional opportunities as compared to non-African Americans," and that he reached a "glass ceiling for African Americans" in December of 1997. (ECF No. 12 at 12.) He also alleges that in one instance his interview time was changed, and Sil was awarded the promotion, after he and Massetti were seen laughing together.[3] (*Id.* at 17.) Even if these allegations fall within the limitations period, they are unexhausted and, as discussed below, insufficient to state a failure to promote claim. *See Hunt v. Con Edison Co. N.Y.C.*, No. 16-CV-

---

[3] These allegations may be time-barred. In his allegations about meetings that took place in the summer of 2017, the plaintiff refers to Sil as "CSR III." (ECF No. 12 at 13.) If the plaintiff's allegations concern Sil's promotion to CSR III, and Sil had been promoted as of May of 2017, these allegations are time-barred. However, because the plaintiff does not provide details concerning the position that Sil was awarded, I cannot conclude from the face of the complaint that these allegations pre-date the limitations period.

12

0677, 2018 WL 3093970, at *5-6 (E.D.N.Y. June 22, 2018) ("The EEOC charge states that Defendant discriminated against Plaintiff on the basis of race and national origin. . . . There is no mention in the charge of any facts suggestive of a failure to promote claim. . . . Based on the general allegations of discrimination included in the EEOC charge, it is unlikely that the EEOC's scope of investigation would have included Plaintiff's failure to promote claim. Thus, . . . Plaintiff failed to administratively exhaust his failure to promote claim.").

IV. **Title VII Discrimination Claims**

To state a discrimination claim under Title VII, the plaintiff must "allege two elements: (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). "As to the first element, an employer discriminates against a plaintiff by taking an adverse employment action against him." *Id.* "A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Id.* (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)) (internal quotation marks omitted). The action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities" to qualify as adverse. *Id.* (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir.2003)) (internal quotation marks omitted). A plaintiff does not need to allege "but-for" causation to state a Title VII discrimination claim, but his race, color, religion, sex, or national origin must be a "'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Id.* at 85-86. He must allege that his employer took the adverse action "at least in part for a discriminatory reason," and must state facts that "directly show discrimination" or "give rise to a plausible inference of discrimination." *Id.* at 87.

### a. Failure to Promote

Even if the plaintiff had exhausted his failure to promote claim, his complaint does not state a claim for failure to promote. "The test for establishing [a] *prima facie* case for discriminatory failure to promote is analogous to, but somewhat different, from the four-part inquiry for discrimination claims generally." *Smith v. Factory Direct Enters. LLC*, No. 18-CV-03463, 2019 WL 4221059, at *5 (E.D.N.Y. Sept. 5, 2019). A "plaintiff must ordinarily demonstrate that: (1) [he] is a member of a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) [he] was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 226 (2d Cir. 2004)) (internal quotation marks omitted). At the pleading stage, a plaintiff must allege that he "applied for a specific position, rather than that . . . he generally requested a promotion." *Id.* at *6. Additionally, the complaint must contain "a description of the responsibilities or duties" of the position "from which one could infer that the plaintiff was qualified for that position." *Mendelsohn v. Univ. Hosp.*, 178 F. Supp. 2d 323, 328-29 (2d Cir. 2002).

The plaintiff alleges in general terms that he was not afforded promotional opportunities, and that in one instance his interview time was changed and Sil was awarded a promotion over him. (ECF No. 12 at 12, 17.) Construing the plaintiff's allegations in the light most favorable to him, his allegations concerning his interview time change can be read to suggest that he applied for a position. However, the plaintiff does not state what the position was, or the responsibilities and duties it entailed. Nor does he plead facts about Sil's qualifications. *See Bowman v. N.Y. Hous. & Cmty. Renewal*, No. 18-CV-11596, 2020 WL 1233701, at *5 (S.D.N.Y. Mar. 13, 2020) (dismissing Title VII claim where the plaintiff "[did] not plead that she and the two promoted

employees [were] similarly situated in all material respects"). Therefore, his allegations are insufficient to state a claim.

### b. Failure to Accommodate

The plaintiff seems to allege that his employer failed to accommodate his unspecified disability, and this failure to accommodate was based on his race. The plaintiff does not allege facts that constitute an adverse employment action to support this claim. He claims that he was relocated "despite [his] medical condition." (ECF No. 12 at 14-15.) After he produced medical documentation, he was returned to his original location. (*Id*. at 15.) This temporary move—which the plaintiff said was an "inconvenience" (*id.* at 14)—is not a "materially adverse change in the terms and conditions of employment" to support a discrimination claim under Title VII. *See Vega*, 801 F.3d at 85; *Dowrich-Weeks v. Cooper Square Realty, Inc.*, 535 F. App'x 9, 11-12 (2d Cir. 2013) (summary order) (being "moved from an office to a cubicle" was not a "materially adverse employment action" to state a Title VII discrimination claim).

### c. Unequal Terms and Conditions of Employment

The plaintiff alleges that his new work assignment—which entailed supervising the largest number of personnel "that had major issues with attendance and other issues"—was "unfair."[4] (ECF No. 12 at 13.) He also alleges that he was not given an inbox, while Tom Stoddard, a white employee, was given a box. (*Id.* at 16-17.) He also claims that he received a counseling memo for events that occurred in September of 2017, but that Stoddard—who he claims should have also received a memo—did not receive one. (*Id.* at 15.)

---

[4] The plaintiff's new assignment took place in April of 2017. Accordingly, if the plaintiff's claim is based on the assignment itself, it is time-barred. To the extent the plaintiff alleges that his workload continued to be unfair, his claim is insufficient for the reasons discussed in this section.

15

Courts have found similar allegations about workload insufficient to allege an adverse employment action, although allegations of significant race-based discrepancies in workload can be enough. *Compare Grant v. N.Y. State Office for People with Developmental Disabilities*, No. 12-CV-4729, 2013 WL 3973168, at *7 (E.D.N.Y. July 30, 2013) ("[U]nfair work assignments, without more, do not amount to 'adverse employment actions' because they are not materially adverse changes in the terms or conditions of [the plaintiff's] employment.") (quoting *Hubbard v. Port Auth. of N.Y. and N.J.*, No. 05-CV-4396, 2008 WL 464694, at *11 (S.D.N.Y. Feb. 20, 2008)) (internal quotation marks omitted) *with Williams v. Serv. Tire Truck Ctr.*, No. 18-CV-1430, 2019 WL 4894106, at *2 (N.D.N.Y. Oct. 4, 2019) (finding the plaintiff's allegation "that he was instructed to perform exponentially more work than his Caucasian counterparts"—along with his allegation that his Caucasian counterparts "were allowed to clock-in dressed in civilian clothes, which he was directed not to do"—was sufficient to allege that he was subjected to "unequal terms and conditions of employment") *and Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *23-24 (S.D.N.Y. Aug. 11, 2009), *report and recommendation adopted*, 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009) (allowing an unequal terms and conditions claim to proceed where the plaintiff alleged that he was assigned to tasks that were not part of his job description because he was not Hispanic). The plaintiff has not alleged that his "unfair" workload was based on race, which defeats his claim of discrimination based on unequal terms and conditions of employment.

The plaintiff does allege that Stoddard, who is white, received a tray and did not receive a counseling memo. However, neither of these actions constitute adverse employment actions sufficient to make out a Title VII discrimination claim. *See Vega*, 801 F.3d at 85 (actions must be "more disruptive than a mere inconvenience" to qualify); *Ziyan Shi v. N.Y. Dep't of State,*

*Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019) (finding allegations about "counseling memoranda . . . insufficient to allege an adverse employment action" under the more permissive retaliation standard) (internal citations and quotations omitted) (collecting cases). Accordingly, I dismiss the plaintiff's Title VII discrimination claims.

## V. Title VII Retaliation Claim

To state a retaliation claim under Title VII, "the plaintiff must plausibly allege that: (1) [the defendant] discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90. The plaintiff "must plausibly plead a connection between the [adverse] act and his engagement in protected activity," and he "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.*

The plaintiff sufficiently alleges that he engaged in protected activities. He states that on September 18, 2017, he filed a "discrimination grievance" that "cit[ed] retaliation, discrimination, training and disparate impact." (ECF No. 12 at 14.) On November 14, 2017, he met with Zenkewich to discuss his grievance; he filed a "step two grievance" on November 28, 2017, and, at some point, he told Zenkewich that it was "discrimination" for him to "refuse to remove" a counseling memo that he received "because of [his] race." (*Id.* at 14-16.) These are protected activities.[5] *See Giscombe v. N.Y.C. Dep't of Educ.*, 39 F. Supp. 3d 396, 401 (S.D.N.Y. 2014) ("Informal complaints to supervisors . . . or filing a formal complaint are protected activities.") (internal citation and quotation marks omitted); *Chukwueze v. NYCERS*, 643 F. App'x 64, 65 (2d Cir. 2016) ("Informal complaints may constitute protected activity" as long as

---

[5] The defendant acknowledges that the filing of the grievance "could arguably qualify" as a protected activity. (ECF No. 18 at 35.)

they are not "so generalized that the employer could not reasonably have understood that [the plaintiff] was complaining of conduct prohibited by Title VII.").[6]

In the retaliation context, an employment action is adverse if it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)) (internal quotation marks omitted). "Courts in the Second Circuit have taken a 'generous' view of retaliatory acts at the motion to dismiss stage." *DeVore v. Neighborhood Hous. Servs. of Jamaica Inc.*, No. 15-CV-6218, 2017 WL 1034787, at *10 (E.D.N.Y. Mar. 16, 2017) (citing *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013)). The plaintiff alleges that he received "retaliation memos" on September 18, 2017 and March 14, 2018, in the form of counseling memos. (ECF No. 12 at 14-15.) He also alleges that on December 1, 2017 he was advised that he was going to be "relocated," although he was returned to his original location after producing medical documentation. (*Id.*)

Courts have found that allegations about "counseling memoranda are . . . insufficient to allege an adverse employment action," unless the memos are "accompanied by other adverse consequences." *Shi*, 393 F. Supp. 3d at 338 (internal citations and quotations omitted) (collecting cases). Courts have also found that relocations and reassignments are not adverse actions. *See Garcia v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-997, 2019 WL 6878729, at *9 (S.D.N.Y. Dec. 17, 2019) (finding that the plaintiff's "relocation to different workspaces" was not an adverse action for the purpose of stating a Title VII retaliation claim, even though "the new workspaces were significantly worse than the one he had occupied") (collecting cases);

---

[6] The plaintiff also alleges that that he held a meeting on August 8, 2017 "to present different scenarios [to] improve workflow and brain storm alternatives to correct the inequities of my work assignment." (ECF No. 12 at 13.) The plaintiff does not allege that he complained about, or even mentioned, racial discrimination at this meeting. Accordingly, it is not a protected activity under Title VII.

18

*Cunningham v. N.Y. State Dep't of Labor*, No. 05-CV-1127, 2010 WL 1781465, at *6 (N.D.N.Y. Apr. 30, 2010), *aff'd*, 429 F. App'x 17 (2d Cir. 2011) ("Although perhaps inconvenient, the relocation of plaintiff's office does not rise to level of an adverse employment action[,] . . . [e]ven if the decision to move plaintiff to the first floor was the product of a retaliatory motive[.]"). The plaintiff alleges that he "advised" that the relocation would be an "inconvenience," and was returned to his original location after he produced medical documentation. (ECF No. 12 at 14-15.) Accordingly, he has not plausibly alleged an adverse action to state a retaliation claim.

Even assuming that the counseling memos were adverse actions, the plaintiff has not plausibly alleged a causal connection between the memos and his protected activity. The plaintiff labels the memos "retaliation memos," and seems to argue that the first memo—which he received on September 18, 2017 before he submitted his step one grievance—was meant to retaliate against him for the August 8, 2017 meeting, which he held to "present different scenarios [to] improve workflow and brain storm alternatives to correct the inequities of [his] work assignment." (*Id.* at 13-14.) However, because he does not plausibly allege that the meeting was a protected activity, or that he engaged in any protected activity before he got the memo, the memo does not give rise to a Title VII retaliation claim.[7] He received the second memo months later, and aside from labeling it a "retaliation memo," he does not connect the memo to his protected activity. Nor does he show causation indirectly by timing; he received the second memo almost six months after he filed his step one grievance and more than three months after he filed his step two grievance. *See Vega*, 801 F.3d at 92 (finding that actions that followed protected activity by less than "three months," "two months," and "approximately two months" were temporally proximate for the purpose of alleging causation); *Harewood v. N.Y.C. Dep't of*

---

[7] This discrete action is also time-barred.

19

*Educ.*, No. 18-CV-05487, 2019 WL 3042486, at *8 (S.D.N.Y. May 8, 2019), *report and recommendation adopted*, 2019 WL 2281277 (S.D.N.Y. May 29, 2019) ("While there is no 'bright line' for determining when temporal proximity is sufficient to plausibly allege causation, courts within the Second Circuit generally have held that 'the temporal nexus between the protected activity and the adverse employment action must be three months or less to establish a causal connection.'") (quoting *Jackson v. N.Y. State Office of Mental Health*, No. 11-CV-7832, 2012 WL 3457961, at *11 (S.D.N.Y. Aug. 13, 2012)); *Cunningham v. Consol. Edison Inc.*, No. 03-CV-3522, 2006 WL 842914, at *19 (E.D.N.Y. Mar. 28, 2006) ("[A] passage of two months between the protected activity and the adverse employment action seems to be the dividing line.") (collecting cases).

## CONCLUSION

For the reasons stated above, I grant the motion to dismiss. In light of the plaintiff's *pro se* status, I grant him leave to file an amended complaint within 30 days of the date of this order. The plaintiff's amended complaint should include only claims that are timely; claims may not be based on discrete incidents that occurred before October 25, 2017, unless there is a basis for equitable tolling. The plaintiff may not re-plead his Section 1981, NYSHRL and NYCHRL claims because they are barred by the Eleventh Amendment. If the plaintiff does not file an amended complaint within 30 days, the complaint will be dismissed and judgment will enter.
**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      March 27, 2020